UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ATHERTON RESOURCES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ANSON RESOURCES LTD., *et al.*,<br><br>Defendants. | Case No. 3:17-cv-00340-MMD-CBC<br><br>ORDER |

## I.  SUMMARY

Plaintiff Atherton Resources, LLC ("Atherton") was working with Defendant Anson Resources Ltd. ("Anson") to help Anson identify and develop profitable mining projects, primarily of lithium, and mostly in Utah. Atherton sued Anson after Atherton realized that Anson was not going to pay Atherton amounts it expected to be paid under an agreement between the parties. The parties' cross-motions for summary judgment primarily seeking the Court's interpretation of disputed contract terms are currently before the Court.[1] (ECF Nos. 88, 89.) Motions to dismiss previously filed by both parties are also before the Court.[2] (ECF Nos. 77, 79.) As explained below, the Court will grant in part, and deny in part, both parties' motions for summary judgment, and deny both parties' motions to dismiss as moot. As also explained below, the Court finds that the parties formed a contract as regards the 'Participation' portion of their agreement, but the terms of that contract are ambiguous, and the applicable terms' meaning must be determined by the finder of fact.

---

[1] The Court also reviewed the parties' responses (ECF Nos. 94, 95), and replies (ECF Nos. 96, 97).

[2] The Court also reviewed the parties' responses (ECF Nos. 81, 84), and replies (ECF Nos. 85, 86).

It follows that the Court must also defer ruling on whether Anson breached its agreement with Atherton, and its corresponding covenant of good faith and fair dealing, as well as whether Anson breached any fiduciary or confidential duties it owed Atherton. However, Anson is entitled to summary judgment as to some of Atherton's non-contract claims.

## II. BACKGROUND[3]

Atherton and Anson are both companies that operate in the mining industry. Atherton, based in Reno, Nevada, is a company that finds and studies potential mining projects for other mining companies. (ECF No. 89-2 at 2.) Anson is an Australian mining company focused on the exploration, acquisition, and development of natural resources—unlike Atherton, it buys and operates mines. (ECF No. 88 at 6.) As relevant here, Atherton's principal is Jim McKay, and Anson's principal is Bruce Richardson. (ECF Nos. 89-2 at 1, 88 at 6.) Acting through McKay, Atherton presented several mining opportunities to Anson beginning in the spring of 2015. (*Id.*) Atherton and Anson also entered into two successive confidentiality agreements in May and July of 2015. (ECF Nos. 88-1, 88-2, 89-6.) Around this time, Anson indicated to Atherton it was interested in lithium mining opportunities, and Atherton introduced Anson to a third party—Voyageur—with whom Anson ultimately entered into an agreement to buy lithium mining claims in Utah, in a geological formation called Robert's Rupture (the "Project"). (ECF No. 88 at 6-7.)

Atherton and Anson's relationship is governed by what amounts to a term sheet as amended by an email reply from Richardson on July 7, 2016 (the "Agreement"). (ECF Nos. 88 at 7, 89 at 5.) The Agreement is a one-page attachment to an email from McKay to Richardson. (ECF No. 89 at 5.) McKay sent the Agreement as an attachment to an email that said: "Hello Bruce [Richardson]: Attached are some thoughts regarding a possible relationship between Anson Resources (Mayan Iron) and Atherton with respect to the Utah lithium property." (ECF No. 89-7 at 2.) Richardson then wrote back to McKay: "We can accept the terms in the attachment with one change. The final payment of the finder's fee

---

[3]The facts recited below are undisputed unless noted otherwise.

2

to be paid when the Full feasibility study is completed. […] If that is acceptable to you then lets proceed to the CA with the project owners." (*Id.* at 3.) In relevant part, McKay then replied to Richardson, "That is acceptable. I will get a draft formal agreement together." (*Id.* at 4.) McKay never put that draft formal agreement together.[4]

The parties agree per stipulation as to certain terms of the Agreement. (ECF No. 87.) Specifically, the parties agree that a contract exists with respect to the portion of the Agreement titled "I. Finder's Fee," and agree as to the terms of that portion of the Agreement. (*Id.*)

However, the parties disagree as to whether a contract exists, and if so, the terms of the following portion of the Agreement (the "Participation Section"):

> **II    PARTICIPATION**
>
> **(a)**    Atherton to receive 2.5 percent of net production revenue.
>
> **(b)**    If the property is sold, Atherton to receive 2% of the sales proceeds.

(ECF No. 89-7 at 6.) The entire dispute centers on these twenty or so words. Atherton contends that, under this Participation Section, Anson owes it money, ongoing royalties, and a property interest in the Project. (ECF No. 89.) Anson counters that it has already paid Atherton what Atherton is owed under the terms of the Agreement that are not fatally ambiguous, and is not bound with respect to the Participation Section of the Agreement, which Anson argues is fatally ambiguous such that the Participation Section cannot constitute a contract. (ECF No. 88.) Therefore, Anson argues, Atherton is neither owed an ongoing royalty, nor does Atherton own a property interest in the Project. (*Id.*)

Both parties have asked the Court to interpret the terms of the Participation Section of the Agreement. (ECF Nos. 88, 89.) Atherton decided to sue Anson after Anson indicated to Atherton it would not pay Atherton money Atherton expected to be paid under the

---

[4]The Court mentions this only because a more fulsome agreement would likely have obviated much of the dispute between the parties, not because the Court seeks to impute any failing to, or draw any inference against, McKay.

3

Agreement. (ECF No. 89 at 8-9.) In addition to declaratory relief (as to the terms of the Agreement), Atherton sued Anson for (in the operative Complaint or "SAC"): breach of contract; breach of the covenant of good faith and fair dealing, unjust enrichment/quantum meruit; fraudulent misrepresentation; breach of confidence; and breach of fiduciary duty. (ECF No. 66 at 7-12.) Anson counterclaimed for declaratory relief that no contract exists with respect to the Participation Section of the Agreement, or in the alternative, that the Participation Section's ambiguous terms should be construed against Atherton.[5] (ECF No. 73 at 13-15.)

### III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89

---

[5]In addition, Atherton previously amended its Complaint to include a fraudulent misrepresentation claim against Richardson. (ECF No. 66 at 9-11.) However, the parties stipulated to the dismissal of Atherton's claims against Richardson, and agreed that Atherton "will limit its claim for unjust enrichment/quantum merit to areas not covered by the parties' Contract, if any." (ECF No. 87 at 3.) The Court approved that stipulation. (ECF No. 92.)

4

(1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting William W. Schwarzer, *et al.*, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992) (citations omitted)). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id*.

## IV. DISCUSSION

### A. Cross Motions for Summary Judgment

As noted above, both parties have moved for summary judgment primarily regarding the correct interpretation of the Participation Section. (ECF Nos. 88, 89.) The parties' summary judgment motions also address Atherton's additional claims against

Anson. The Court first addresses the core contractual disputes below, and then addresses Atherton's additional claims against Anson.

### 1. Whether a Contract Exists

To start, the Court finds that the Participation Section is an enforceable component of the larger Agreement. "The existence of a contract is a question of law." *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1245 (D. Nev. 2016), *appeal dismissed*, No. 16-16542, 2017 WL 3923364 (9th Cir. Mar. 20, 2017) (citations omitted). "Formation of a valid contract requires that there be a meeting of the minds as evidenced by a manifestation of mutual intent to contract." *Id.* (citations and quotation marks omitted). "This manifestation can take the form of an offer by one party and acceptance by the other." *Id.* at 1245-46 (citations omitted).

Here, McKay sent Richardson the Agreement, and Richardson agreed to be bound by it, subject to the modification that Anson would only owe Atherton a finder's fee after a full feasibility study was completed. (ECF No. 89-7.) That modification regarding when Anson would owe Atherton a finder's fee does not affect Richardson's acceptance of the Participation Section on Anson's behalf. Thus, Richardson accepted the terms of the Participation Section on Anson's behalf in his reply to McKay's email that had the Agreement attached to it. *See Shaw*, 201 F. Supp. 3d at 1246 (finding that bank agreed to mortgage modification where the record established a manifestation of mutual intent between the parties). Further, Atherton and Anson stipulated that a contract existed as to the 'Finder's Fee' portion of the Agreement. (ECF No. 87.) Thus, it would be illogical that they did not agree to the other two terms written in the same, one-page document, especially where all appearances are to the contrary here. Anson is therefore bound to some degree by the Participation Section.

In addition, the Court is not persuaded by Anson's argument that the Participation Section is so ambiguous as to render it not a contract at all. (ECF No. 88 at 12.) The first term of the Participation Section appears intended to give Atherton some sort of royalty or

other ongoing stake in money earned from whatever is pulled out of the ground by Anson from mining projects Atherton locates for Anson. (ECF No. 89-7 at 6.) The second term of the Participation Section appears intended to entitle Atherton to a one-time payment if Anson sells "the property," presumably mining projects presented to Anson by Atherton. (*Id.*) The Court finds that Anson agreed to something along these lines. *Local 3-7, Int'l Woodworkers of Am. v. DAW Forest Prod. Co.*, 833 F.2d 789, 793-94 (9th Cir. 1987) (reversing district court's finding that contract was fatally ambiguous where one party's obligation to give good faith consideration to the other party's future proposals was not overly vague and noting its decision was guided by the principle that courts must "avoid destruction of contracts because of uncertainty and construe them to effectuate the reasonable intentions of the parties if possible[.]") However, the Court agrees with Anson that the terms of the Participation Section are ambiguous—and leave open key questions about what Anson owes Atherton under the Participation Section. (ECF No. 88 at 13-14.) But the Court denies Anson's motion for summary judgment to the extent it contends the Agreement is fatally ambiguous. In contrast, the Court grants Atherton's motion for summary judgment to the extent it seeks to establish that the Participation Section is an enforceable component of the Agreement.

### 2. Ambiguity of Contract Terms

The Court finds that the terms of the Participation Section are ambiguous because they are subject to more than one reasonable interpretation. *See Shelton v. Shelton*, 78 P.3d 507, 510 (Nev. 2003) ("A contract is ambiguous if it is reasonably susceptible to more than one interpretation."); *see also Galardi v. Naples Polaris,* LLC, 301 P.3d 364, 366 (Nev. 2013) ("Whether a contract is ambiguous likewise presents a question of law."). The Participation Section is subject to at least the following ambiguities: (1) the parties reasonably dispute the geographic scope of the entire Participation Section (ECF Nos. 88 at 17-20, 89 at 14-18); (2) the key concept of net production revenue is undefined, though Atherton unpersuasively argues it is the unambiguous synonym of "Net Smelter Return"

(ECF No. 89 at 12-14); (3) sales proceeds is also undefined (ECF No. 95 at 8); and (4) whether Atherton's interest in "the Property" runs with the land, or is extinguished upon sale (*id.* at 9). In general, while the Court finds that the parties agreed to something in the Participation Section, the precise contours of that agreement are unclear—and correctly interpreting the Participation Section to effectuate the parties' intent will require further factual development.

Therefore, neither party is entitled to summary judgment as to the meaning of the terms of the Participation Section. *See Phillips v. Clark Cty. Sch. Dist.*, 903 F. Supp. 2d 1094, 1100 (D. Nev. 2012) ("[S]ummary judgment is inappropriate whenever a term or provision in the contract is ambiguous.") (citations omitted). As this case proceeds, the parties must present admissible evidence as to what they agreed to when they entered into the Agreement, and the factfinder will construe the terms of the Participation Section. *See Galardi*, 301 P.3d at 368 ("A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence.") (citation omitted); *see also Wiley v. Cook*, 583 P.2d 1076, 1079 (Nev. 1978) ("A trial court may also construe an ambiguity in the writing by receiving parol evidence.").

### 3. Breach of Contract

Whether Anson breached the Agreement depends on the meaning of the applicable contract terms, including the terms of the Participation Section. Therefore, Atherton's argument that it is entitled to summary judgment on this claim because Anson breached the Agreement by anticipatorily repudiating the contract (ECF No. 89 at 22-23) is premature. *See Phillips*, 903 F. Supp. 2d at 1100-1102 (denying cross-motions for summary judgment on the plaintiff's breach of contract claim where the underlying contract was ambiguous). The Court thus denies Atherton's motion for summary judgment on its breach of contract claim without prejudice.

///

### 4.  Breach of the Covenant of Good Faith and Fair Dealing

As with its breach of contract claim, Atherton argues it is entitled to summary judgment on this claim because Anson anticipatorily repudiated the Agreement. (ECF No. 89 at 23.) But where, as here, genuine issues of material fact preclude a finding as to whether Anson breached the Agreement, so too they preclude a finding on whether Anson breached the Agreement's implicit covenant of good faith and fair dealing. *See Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998) ("Since we have held that a genuine issue of material fact exists as to whether [the defendant] breached its express warranties, we correspondingly hold that a genuine issue of material fact exists as to whether [the defendant] breached its implied covenant of good faith and fair dealing in its express warranties.") Thus, the Court denies Atherton's motion for summary judgment on its claim that Anson breached the implied covenant of good faith and fair dealing without prejudice.

### 5.  Unjust Enrichment/Quantum Meruit

Atherton also sought to hold Anson liable under an unjust enrichment theory. (ECF No. 66 at 8-9.) Anson argues it is entitled to summary judgment on this claim because an unjust enrichment theory is not available where there is an express agreement. (ECF No. 88 at 20.) The Court agrees. Because the Court finds herein that a contract exists between the parties with respect to the Participation Section (*see supra* Section IV.A.1), Atherton's unjust enrichment claim fails. *See Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) ("An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement."). Further, Atherton conceded as much. (ECF No. 94 at 21.) Thus, Anson is entitled to summary judgment on Atherton's unjust enrichment claim.

///

///

### 6. Fraudulent Misrepresentation

Atherton amended its Complaint to allege fraudulent misrepresentation by Anson's principal Bruce Richardson. (ECF No. 66 at 9-11.) This cause of action is largely rendered moot by the parties' previous stipulation, later approved by the Court. (ECF Nos. 87, 92.) In that stipulation, the parties agreed that "Atherton shall dismiss its claim for fraudulent misrepresentation against Bruce Richardson[.]" (ECF No. 87 at 3.) Further, Anson argues that stipulation entitles it to summary judgment on Atherton's fraudulent misrepresentation claim. (ECF No. 88 at 23.) Again, the Court agrees with Anson.

To the extent Atherton insists on prosecuting this claim against Anson, Anson is entitled to summary judgment because Atherton has not even alleged facts against Anson that could support a fraudulent misrepresentation claim. Under Nevada law, fraudulent misrepresentation requires: "[a] false representation made by the defendant, knowledge or belief on the part of the defendant that the representation is false—or, that he has not a sufficient basis of information to make it, an intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation, justifiable reliance upon the representation on the part of the plaintiff in taking action or refraining from it, and damage to the plaintiff, resulting from such reliance[.]" *Lubbe v. Barba*, 540 P.2d 115, 117 (Nev. 1975). As Anson points out, Atherton's fraudulent misrepresentation claim is entirely based on events that occurred well after the parties entered into the Agreement. (ECF No. 88 at 25.) Thus, Anson could not have induced Atherton to enter into the Agreement through the conduct discussed in the fraudulent misrepresentation portion of Atherton's SAC. Atherton accordingly cannot establish the required elements of fraudulent misrepresentation here.

In addition, while Atherton argues it alleged another fraud theory in its SAC—that Anson concealed its plans to stake additional lithium claims near the claims Atherton introduced it to—no such theory appears in the SAC. (*Compare* ECF No. 94 at 23 *with* ECF No. 66 at 9-11.) Further, the Court agrees with Anson that the parties' stipulation

largely moots Atherton's fraudulent misrepresentation claim. In sum, the Court grants summary judgment to Anson on Atherton's fraudulent misrepresentation claim.

### 7. Breach of Fiduciary Duty and Breach of Confidence

Finally, Atherton also seeks to hold Anson liable under theories that Anson breached its fiduciary and confidential duties to Atherton. (ECF No. 66 at 11-12.) Anson contends that it owed Atherton no fiduciary duty. (ECF No. 88 at 21-22.) Atherton counters that Anson is not entitled to summary judgment on these claims—even though their relationship does not fall within one of the traditional fiduciary duty categories—because the parties' relationship was also subject to a confidentiality agreement, and because the parties had a close working relationship. (ECF No. 94 at 24-25.)

"Nevada law recognizes a duty owed in confidential relationships, where one party gains the confidence of the other and purports to act or advise with the other's interests in mind." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 881 (9th Cir. 2007) (internal quotation marks and citations omitted). Atherton and Anson's relationship was subject to a confidentiality agreement. (ECF Nos. 88-2, 89-6.) Anson has not proffered any admissible evidence to support its argument that it owed Atherton no fiduciary duty, or other duty arising out of their confidential relationship. (ECF No. 88 at 21-22.) Instead, Anson makes the unpersuasive argument that it owed Atherton no duty because it obtained information about the lithium claims it pursued from a third party, Voyageur. (ECF No. 88 at 22.) But that argument does not go to the relationship between Anson and Atherton. Nor did Anson address Atherton's response that the special circumstances of its relationship with Anson gave rise to a confidential relationship. (ECF No. 94 at 24-25; *see*

*also* ECF No. 96.) Thus, Anson has failed to meet its burden in seeking summary judgment.[6] Anson is not entitled to summary judgment on these claims.[7]

**B.      Motions to Dismiss**

As noted above, both parties previously filed motions to dismiss in this case. (ECF Nos. 77, 79.) Atherton's motion to dismiss (ECF No. 77) sought to dismiss Anson's counterclaim for declaratory relief that asked the Court to interpret the Agreement, and construe it against Atherton as the drafter. That motion is moot in light of the discussion above. (*See supra* Sections IV.A.(1, 2).) Anson's motion to dismiss (ECF No. 79) sought to dismiss Atherton's fraudulent misrepresentation claim against Richardson and Anson. That motion is also moot in light of the discussion above. (*See supra* Section IV.A.6.) Thus, both motions are denied as moot.

**V.      CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions pending before the Court.

It is therefore ordered that Anson's motion for summary judgment (ECF No. 88) is granted in part, and denied in part. It is granted with respect to Atherton's claims against Anson for: (a) unjust enrichment/quantum meruit; and (b) fraudulent misrepresentation. It is denied in all other respects.

---

[6] Further, Atherton correctly points out (ECF No. 94 at 25) that the existence of a special relationship between the parties is a question of fact unsuitable for resolution on summary judgment. *See Giles*, 494 F.3d at 881.

[7] Anson's citation of the Court's prior decision in *On Demand Direct Response, LLC v. McCart-Pollack*, Case No. 2:15-cv-01576-MMD-VCF, 2016 WL 5796858, at *4 (D. Nev. Sept. 30, 2016), *appeal dismissed sub nom. On Demand Direct Response, LLC v. McCart-Pollak*, No. 17-15020, 2017 WL 6812269 (9th Cir. Mar. 2, 2017) is unavailing. (ECF No. 88 at 21.) There, unlike here, there was no confidentiality agreement or close working relationship between the applicable parties.

It is further ordered that Atherton's motion for summary judgment (ECF No. 89) is granted in part, and denied in part. It is granted to the extent it seeks to establish that the Participation Section is an enforceable component of the Agreement. It is denied in all other respects.

It is further ordered that both parties' motions to dismiss (ECF Nos. 77, 79) are denied as moot.

DATED THIS 2nd day of January 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE